WILLIAM T. STEAD MEMORIAL CENTER OF NEW YORK *vs.* TOWN OF WAREHAM.

Plymouth. April 9, 1937. — January 31, 1938.

Present: RUGG, C.J., FIELD, DONAHUE, LUMMUS, & QUA, JJ.

*Tax*, Exemption.

The provisions of § 5, Eleventh, of G. L. (Ter. Ed.) c. 59 did not require recovery from a town by a religious corporation in an action of con-

tract of the amount of a tax, assessed and paid under protest upon a building used by the corporation only in part for religious worship and instruction.

CONTRACT. Writ in the Superior Court dated July 30, 1935.

The action was heard without a jury by *Fosdick,* J. The plaintiff asked for, and the judge refused, a ruling that its property was exempt from taxation under G. L. (Ter. Ed.) c. 59, § 5, Eleventh. The judge stated: "Possibly in some other proceeding than one of this kind the exemption provided by the statute can be worked out for such portions of the property in question as are appropriated and truly and exclusively used for purposes of religious worship and instruction. I rule that on my findings the plaintiff is not entitled to recover in this action."

There was no contention of an exemption under § 5, Third. There was a finding for the defendant. The plaintiff alleged exceptions.

*H. J. Booras,* (*J. A. Edgerly* with him,) for the plaintiff.

*J. F. Kiernan,* for the defendant, submitted a brief.

RUGG, C.J. The plaintiff is a religious corporation organized under the laws of the State of New York. It seeks by this action of contract to recover the sum paid by it for taxes assessed on its property in Wareham for the year 1934. The tax was paid by the plaintiff under a written protest. It appeared at the trial that the property upon which the tax was assessed was acquired by the plaintiff with donations by its various members for the dominant purpose of use as a summer church and center; and that from the time of its acquirement, and during the year of 1934, the primary purpose for which said property was being used was the advancement of the objects of, and in conformity to, the religious purposes and practices of the plaintiff. In accordance with the judgment of the board of trustees of the plaintiff, the pastor and other officials of the plaintiff were sent to remain on the property during the summer months, and to put the property to the use and practices of the plaintiff as a religious organization. Consequently, the pastor, the

clerk, and the president of the plaintiff remained on the property during the summer months. They used some rooms for sleeping quarters, and also used the kitchen and dining room, incidentally to their staying on the property in order to be of regular and continuous service in the execution and furtherance of the objects and religious purposes of the plaintiff. The premises were open to the members and adherents of the plaintiff, and to the public in general, at all times; and in addition to the solemnization of marriages, baptisms, and burials, daily prayers were held, regular services at least twice a week, and daily seance sittings and meditations. Regular sermons and lectures were given to members of the general public, and pamphlets and books written and distributed gratuitously to libraries and to many people. At the close of the summer season the property would be closed during the remainder of the months, and a resumption of the same religious activities would be undertaken during the following summer season. The trial judge made these findings: "The property in question consists of a well built and attractive nine room dwelling house, suitable for year 'round occupancy, on a lot of land abutting the seashore in a community consisting almost wholly of houses used only during the summer months and not used for habitation during the rest of the year. The land is no greater in extent than comports with the use actually made of it by the plaintiff. The building was originally erected and used for a dwelling and not for a place of worship. The community in which it is located is one to which in the summer a great many persons resort who hold the same religious beliefs as that for the furtherance of which the plaintiff was formed and exists, broadly designated as Spiritualism. Certain of the rooms in the house are appropriated to and used wholly for the religious purposes of the plaintiff. Certain rooms, however, are bedrooms used wholly as such for the lodging of the plaintiff's pastor, its president, its clerk and occasionally for others who take part in the public religious services of and public instructing in religious matters done by the plaintiff. These persons also use the kitchen and dining room facilities of the building for the preparation and serv-

ing of their meals.   The pastor is an active factor in the conducting of religious services and teaching in the house and I find that all who dwell in the house are active factors to some extent in . . . conducting and administering such services and instruction.   The president and the clerk also attend to what may be called the prudential or business affairs of the plaintiff while residing in the house.   Religious books are written and distributed from there.   No revenue appears to be received by the plaintiff by way of rentals of any part of the property or of charges for admission to services or for religious instruction.   Those who dwell in the house do not pay the plaintiff for the use of their lodgings, either directly or indirectly.   That they should reside in the house is of advantage to the carrying out of the religious purposes of the plaintiff and is by sanction of the plaintiff. Other than by the doors and partitions and floors usual to a dwelling when it is used as the place of abode of a single family there is no separation of the rooms used for religious services and instruction from those used for ordinary dwelling purposes.   The furniture in each room appears to be suitable for the uses to which the room is put and there is no evidence that the furniture in any room is put to any other use than that of the room in which it is.   The house is not at all in the usual form of churches or chapels, interiorly or exteriorly, but that fact is not determinative of this case.   I treat the situation as I would that of a building which has the exact outward appearance of a meetinghouse and which has within the usual auditorium, rooms for the sabbath school, minister's study, sewing circle, . . . with a kitchen for the preparation of church suppers and any other rooms commonly included within a meeting house, and which has in addition certain rooms used for living quarters of persons who are active factors in the services and instruction of the organization owning the building.   The inclusion of these cooking, eating and bed rooms, used wholly for secular purposes, makes of the edifice of the plaintiff a sort of combination meeting house and parsonage . . . ."   It was found, also, that "the kitchen and dining room facilities" were used more as would be like parts of a parsonage.   Por-

tions of the house and furniture were appropriated and used by the pla nt ff for purposes other than religious worship and instruction. There was a general finding for the defendant.

It is provided by G. L. (Ter. Ed.) c. 59, § 5, Eleventh, that there "shall be exempt from taxation," "Houses of religious worship owned by, or held in trust for the use of, any religious organization, and the pews and furniture; but the exemption shall not extend to portions of such houses appropriated for purposes other than religious worship or instruction." "Real estate held by ordinary educational, charitable or religious institutions is exempt from taxation only to the extent that it is appropriated to their distinctive uses." *Old South Association* v. *Boston,* 212 Mass. 299, 303. The finding is explicit, in the case at bar, to the effect that certain rooms of the plaintiff were "used wholly . . . for . . . lodging." Manifestly these portions were "appropriated for purposes other than religious worship or instruction." The plaintiff in *South Congregational Meetinghouse in Lowell* v. *Lowell,* 1 Met. 538, sought exemption of its real estate from taxation. It owned a church edifice. The upper stories of the building were used as a place of worship and for a vestry. The plaintiff retained six tenements, which were let as stores. It was held that "the exemption in the statute extended to that part of the property only which was used as a place of worship, and for purposes connected with it; such as the vestry, the furnace and the like; but did not extend to separate tenements used for purposes exclusively secular." *Chapel of the Good Shepherd* v. *Boston,* 120 Mass. 212. *First Universalist Society in Salem* v. *Bradford,* 185 Mass. 310, 312. *Evangelical Baptist Benevolent & Missionary Society* v. *Boston,* 204 Mass. 28. It is a familiar principle that no exemption from taxation can be allowed except upon its being fairly shown that it was intended by the terms of the statute. It is impossible to extend by construction the operation of such exemption beyond the plain words of the statute. Respecting a contention for the exemption of a parsonage standing on the lot on which the church itself

had been erected, it was held that such exemption was not within the scope of the statute. It was said in *Third Congregational Society of Springfield* v. *Springfield*, 147 Mass. 396, 398, that the "Legislature intended to limit the exemption to the houses of religious worship alone, or to the portions of an edifice appropriated therefor, and their pews and furniture . . . ." The principles declared in these cases are decisive against the exemption here claimed. It is not necessary to examine decisions which have arisen under G. L. (Ter. Ed.) c. 59, § 5, Third, because the terms of the exemption there established are somewhat broader than those here controlling. This is pointed out in *Third Congregational Society of Springfield* v. *Springfield*, 147 Mass. 396, 398, and need not be repeated.

The several requests for rulings need not be examined in detail. No error is disclosed.

*Exceptions overruled.*