Community Drama Association of Des Moines, appellee, v. Iowa State Tax Commission (members), appellants.

No. 50305.

(Reported in 109 N.W.2d 23)

May 2, 1961.

Evan Hultman, Attorney General, and Gary S. Gill, Special Assistant Attorney General, for appellants.

Dickinson, Throckmorton, Parker, Mannheimer & Raife, of Des Moines, for appellee.

SNELL, J.—This is an action to determine the liability of Community Drama Association of Des Moines under the Iowa Sales Tax Law. The facts are not in dispute.

I. Appellants are the Iowa State Tax Commission and the members thereof. They will be referred to as the Commission.

Appellee is Community Drama Association of Des Moines, a corporation not for pecuniary profit organized under the laws of Iowa. It will be referred to as appellee. It is also called The Community Playhouse. Its amended Articles of Incorporation provide in part: "The business and objects of the association shall be to conduct a school or drama association, producing amateur theatrical productions for educational, civic and benevolent purposes."

Appellee presents theatrical productions, play readings, children's classes, workshops and demonstrations, children's productions and lectures in the field of theatre. Appellee sells memberships which entitle purchasers to membership in the corporation, participation in the voting for directors and admission to all plays presented during the year.

Memberships are now $8.00 a year.

Individual admissions are $2.00 on weekdays and $2.50 on Friday, Saturday and Sunday nights; student tickets are $1.00 per seat, and tickets for children's productions are fifty cents each.

Appellee has a paid managing director, a paid technical director and a paid children's director. All other participants in the activities of appellee are volunteers serving without pay.

The managing director co-ordinates and supervises the activities of the playhouse; he recruits and directs the cast.

The technical director designs, instructs and supervises the building, painting and execution of scenery for all productions.

The children's director instructs the children in the workshop classes and directs children's theatre plays.

Appellee presents six major play productions a year with 14 performances of each production and 84 nights of theatre each year. Auditions for the production are not limited to playhouse members.

Children's workshop classes are tuition-paying classes for work in creative drama, speech correction or acting. Children participating range in age from 4 to 14. A special speech therapist is available to assist in addition to regular classroom work. No formal grades or degrees are awarded.

There are two children's productions a year with open tryouts available to any child in the area.

Adult education classes are cosponsored with the Department of Adult Education of Des Moines Public Schools. Personnel of the playhouse teach these classes. Classes are offered without tuition.

Lectures by nationally known people in the theatre have been sponsored by appellee. These lectures are open to the public.

A dramatic library is maintained available to the public without charge.

Of the members, between 500 and 1000 participate in the activities.

Appellee's income is derived from the major productions, children's theatre, advertisements in play programs, refreshments sold, rentals from the sale of the house for special productions and some interest received from money on deposit.

Productions having historical value as well as other subject matter have been made available without charge to students of high schools and parochial schools in the Des Moines area. Authentic costumes for such plays have been made available.

Quite often the children's classes produce a play that is presented at hospitals and charitable institutions.

Workshops are conducted with participation of leaders from

religious and drama groups, Girl Scouts, Boy Scouts and Campfire Girls.

The playhouse presents a series of play readings in which the participants read the lines of the actors without memorizing. This makes possible participation by those who do not have time to devote to a regularly produced play.

Membership in the playhouse is not a prerequisite to participation in playhouse activities.

There has never been any distribution of property to any member of the playhouse.

All of appellee's income is exempt from Federal income tax and appellee is included in the list of organizations described in the Internal Revenue Code of the United States as an organization contributions to which are deductible for Federal income tax purposes.

There is regular attendance at the plays by drama classes from Simpson, Grinnell and Grandview Colleges, and the playhouse program is a part of the curriculum in the Drake University educational program.

A professor in the Speech Department, College of Fine Arts, State University of Iowa, experienced in the work of community theatres and with a thorough background of research in his field, testified:

"The capital investment in the amateur theatre receives dividends of educational, cultural and social values. * * * The well-administered and intelligently directed Community Theatre has been found to be an important part of community life. * * * It is not a theatre limited to the talented artistic few, but is instead a common medium of communal life. * * * The active participants in the community theatre * * * receive benefits from the theatre in proportion to the amount of work accomplished by the individual in the theatre. * * * The value of a community theatre is measured by its service to the community, and the theatre by performing services justifies its existence as a social institution. * * *

"* * * in general educators, all educators say education is an ongoing process: It never stops. You may learn different ways under different kinds of instructions * * *."

After a thorough discussion of all of the aspects involved in community theatre activities, the professor stated that the appellee's activities were educational.

During the war years appellee contributed to the war effort through the presenting of skits, radio programs, personal appearances for Red Cross and bond drives and free performances for the Wacs and soldiers stationed near by. Since then, plays have been presented at Veterans Hospital. Appellee has received an award from the Adult Education Department of the public school system for contributing to the adult education program.

A professor of English at Drake University, with his particular area of emphasis Modern Drama and History of the English Drama, discussed the program of community theatres at length and the value to the community, and supported appellee's contention as to the educational value of a community theatre. In answer to the question: "Is education a process that continues after you graduate from college?" he answered, "It often begins then."

The director of the Department of Adult Education of Des Moines Public Schools testified as to appellee's contribution and cosponsorship of classes in the adult education program and stated that if there were not a playhouse program, there would be a gap in adult education in the community.

An assistant professor of Drama at Drake University, with extensive experience as an educator, testified as to the value of the children's program and stated that community theatres are playing a distinct role in broadening and teaching culture to the peoples of the communities in which they are functioning and provide many forms of adult education, avocational, recreational, remedial and social.

In all, eleven witnesses thoroughly familiar with the purposes, activities, programs and results of appellee, testified in support of appellee's position.

The evidence in behalf of defendant Commission consisted of testimony of field auditors as to the receipts of appellee. No evidence was offered to refute the claim as to the educational activities of the appellee.

II.   In closing the argument for appellee, counsel appro-

priately quotes from the immortal bard, William Shakespeare: "The play's the thing wherein I'll catch the conscience of the king."

As did Shakespeare, appellee hopes to appeal to the conscience of the court so that it may carry on its activities in full without hindrance or depreciation at the hands of the tax gatherer.

To all of which the Commission replies that while there may be education incident to the program of appellee, the participants in the activities of appellee are there primarily for fun, amusement and recreation and, as such, should contribute to the public revenue. Should fun and entertainment, even though educational, be taxed to help the state treasury meet the increasing demands for support and relief? This is not a question for us to answer. It is not for the courts to say who should or should not be taxed, nor who should be granted special privilege by way of exemptions. Our function is confined to the application of the rules as enacted by the legislature.

III. Section 422.43, Code of Iowa, provides as follows:

"There is hereby imposed * * * a tax of two percent upon the gross receipts * * * from all sales of tickets or admissions to places of amusement * * *."

Section 422.45 of the Code provides as follows:

"There are hereby specifically exempted from the provisions of this division and from the computation of the amount of tax imposed by it, the following:

"* * *

"3. The gross receipts * * * from educational, religious, or charitable activities, where the entire net proceeds therefrom are expended for educational, religious, or charitable purposes."

This exemption statute has not been previously construed by us. The question of fact thereunder is whether or not the activities of appellee are educational within the meaning of the statute.

IV. While an imposing statute must be strictly construed against the taxing authority, the trial court found, and we agree, at least part of the gross receipts were from admissions to a place of amusement, so that appellee is subject to the

tax imposed by section 422.43, and any relief to the appellee must come through the exemption statute.

V. While it is argued plausibly that the broad generic term "charitable" includes the activities of appellee, we cannot believe that the word in the statute was so intended. We accept the common understanding of the term "charitable" rather than an unusual, though technically correct, meaning.

VI. The participants in appellee's activities undoubtedly have fun and produce entertainment. That may well be the motivating influence with many, but that does not change the meaning of the word "educational" nor detract from the educational value of an activity. We are not attempting to place the stamp of judicial approval upon unnecessary "frills" in scholastic curricula but we do say that wholesome entertainment or enjoyment does not necessarily detract from education. Attractive packaging is big business today. Attractive packaging does not impair the educational value of a mental stimulant.

VII. Appellants (Tax Commission et al.) argue that the word "educational" in the statute should be limited to formally organized school curricula.

We cannot agree that education is limited to those who have enjoyed extensive formal education. Abraham Lincoln, whose greatness will live forever in human memories, had less than one year of formal schooling. One of the great masterpieces of our language is his Gettysburg Address.

John L. Lewis is known not only as an outstanding labor leader but as a phrasemaker and forceful speaker. His formal schooling did not go beyond the public schools.

The list of inventions by Thomas A. Edison would unduly extend this opinion. His formal education was limited to three months in public school.

The greatest educators of all time were, of course, the founders of the world's great religions; yet little is known of their formal schooling.

It is so obvious as to be axiomatic that the easiest, fastest and best way to acquire education is through organized school curricula. However, such sources are not exclusive.

VIII. Webster's New International Dictionary gives sev-

eral definitions for the word "educate", including, "To develop and cultivate mentally or morally." The word "education" also has several meanings, including, "The impartation or acquisition of knowledge, skill, or discipline of character." As a part of the definition there is a quotation from H. Spencer, "To prepare us for complete living is the function which *education* has to discharge." The word "educational" is defined as "Of, pertaining to, engaged in, or subserving, education; dealing or associated with education; belonging to or applied to the field of education."

IX. In this rapidly changing age of science and technology, educators and workers in the field of the humanities are stressing the need for worthwhile activities to occupy the so-called leisure time.

The April 1961 issue of *Iowa Alumni Review* published by the State University of Iowa Alumni Association, devotes considerable space to an article entitled "Testimony for the Arts." This article says: "While the professional theatre seems to be faltering, it is paradoxically true that theatre is flourishing in the 'hinterlands,' the expanses of the country between the metropolitan 'cultural centers' located on the coasts. Culture is coming to the land-locked masses in a big way. Community theatres are doing booming business." The article closes with the statement that "the University Theatre of the State University of Iowa continues to strengthen and expand its dramatic arts program, hoping that it can aid in the creation of truly cultured persons, able to mingle adequately with other educated, intelligent citizens in the communities * * *."

It would be unfair to say that activities of appellee comparable to those sponsored by our schools of higher learning fail to qualify as educational merely because they are not a part of a regular school curriculum.

X. The broad definition of the word "education" finds support in our cases. In re Petty, 241 Iowa 506, 511, 41 N.W.2d 672, 675, quotes with approval: "* * * education is defined as a broad and comprehensive term with a variable and indefinite meaning, and in its broadest significance comprehends the acquisition of all knowledge tending to develop and train the

individual. ' "Education" is a broad term, and includes all knowledge, if we take it in its full, and not in its legal or popular, sense. Whatever we learn by observation, by conversation, or by other means, away from what has been implanted by nature, is education. In fact, everything not known intuitively and instinctively is education * * *.' * * * It has been defined as 'the process of developing and training the powers and capabilities of human beings.' "

The term "educational use" is not limited to classroom activity. We have held that "married students' dormitories are a proper and appropriate educational and religious use." Schueller v. Board of Adjustment, 250 Iowa 706, 708, 95 N.W.2d 731.

A broad rather than restricted meaning of the word "educational" has been accepted in many jurisdictions. This concept is clearly stated by the circuit court of the Tenth Circuit in quoting the district court in Jones v. Better Business Bureau of Oklahoma City, 123 F.2d 767, 769, quoting 34 F. Supp. 573, 575: "Educational training is not confined to colleges, universities or even the public schools, but consists, in the broadest sense, of acquiring information or inspirational suggestions which cause the individual to think and act along proper lines. Certainly, the teaching of honesty, integrity, and truthfulness is the very highest objective of an education."

XI. We realize that the Tax Commission, in conscientiously administering the Acts of our legislature, is faced with a problem in this case that cannot be lightly brushed aside. The Commission asks for guidance as to what educational activities are. We appreciate the Commission's dilemma but are unable to announce any all-inclusive rule. In most cases the problem is factual and the Commission must guard against subterfuge. Incorporation as here and the production of a few plays might be a mere front for otherwise taxable activities.

■ Statutes exempting property from taxation must be strictly construed. If there is any doubt upon the question, it must be resolved against the exemption and in favor of taxation. National Bank of Burlington v. Huneke, 250 Iowa 1030, 98 N.W.2d 7.

█ In the face of this rule of strict construction against tax exemptions, has appellee brought and kept itself within the statute? The record indicates that it has. As a nonprofit corporation its stated objectives (Articles of Incorporation, supra) are clearly within the exemption statute. The several hundred participants are directed by professional instruction. The instruction is available to the public. The activities are educational, cultural and an asset to the community. The receipts are devoted to declared objectives. As required by the statute, proceeds from the activities are expended for educational purposes. The fact that the activities also give pleasure and entertainment supports, rather than weakens, appellee's position.

The record establishes not only that appellee's program is good, it is also within the exemption statute.

The decree of the trial court is affirmed.—Affirmed.

All JUSTICES concur.