RAYMOND L. MOORE, appellant, v. A. J. MURPHY, JOHNSON COUNTY et al., appellees.

No. 50720.

(Reported in 119 N.W.2d 759)

February 12, 1963.

J. C. Beckley, Margaret L. Beckley and L. M. Hullinger, Sr., all of Cedar Rapids, for appellant.

Edward L. O'Connor and Ralph L. Neuzil, both of Iowa City, for appellees.

STUART, J.—Plaintiff brought an action for damages against Johnson County, the Board of Supervisors, and A. J. Murphy, sheriff, alleging he sustained personal injuries while in the sheriff's custody. Motions to dismiss the action filed on behalf of each defendant were sustained by the trial court. Plaintiff appeals from the court's ruling sustaining the motion to dismiss as to A. J. Murphy.

The trial court held A. J. Murphy was in the performance

of his duties as required by law: "He was working in his governmental capacity and if he was guilty of any acts of negligence it was nonfeasance rather than malfeasance or misfeasance, and under the numerous holdings of the Iowa Supreme Court he is not liable for damages in case of nonfeasance."

There is a general agreement between both parties and the trial court that an officer or employee of a county is not personally liable for acts of nonfeasance in connection with his duties as such employee, but is liable for acts of misfeasance which occur while in the performance of his duties. Parties cite an almost identical list of authorities in support of their conflicting positions. Montanick v. McMillin, 225 Iowa 442, 280 N.W. 608; Shirkey v. Keokuk County, 225 Iowa 1159, 275 N.W. 706, 281 N.W. 837; Perkins v. Palo Alto County, 245 Iowa 310,. 60 N.W.2d 562; Wittmer v. Letts, 248 Iowa 648, 80 N.W.2d 561; Genkinger v. Jefferson County, 250 Iowa 118, 93 N.W.2d 130; Conrad v. LeMoines, 253 Iowa 320, 112 N.W.2d 360.

The case of Montanick v. McMillin, 225 Iowa 442, 280 N.W. 608, contains a comprehensive analysis of the Iowa authorities and cites many cases from foreign jurisdictions. It clearly distinguishes between acts of nonfeasance and acts of misfeasance as they affect the personal liability of an employee or agent, and is the basis for the rule announced by the trial court quoted above. The narrow issue to be determined in this appeal is whether plaintiff in his petition pleads acts of negligence constituting misfeasance or nonfeasance.

Plaintiff alleges: "That on or about the 8th day of May 1959, while plaintiff was a prisoner in the Johnson County jail, the defendant, A. J. Murphy, in his capacity as sheriff of Johnson County, Iowa, did remove said plaintiff from his cell contrary to the statutes of the State of Iowa, and did order him to climb a ladder placed in position by the defendant, A. J. Murphy. That said ladder was wobbly and plaintiff complained of said fact, that defendant Murphy then held ladder and told plaintiff to paint. That defendant Murphy then walked away from said ladder allowing it to fall causing * * * injuries * * *.

"3. That said defendant was negligent at said time and place in the following particulars: * * *

"(2) That he did order plaintiff on a ladder knowing that it was unsafe.

"(3) That he did not continue to hold said ladder to keep it from falling."

■ Nonfeasance is the omission of an act which a person ought to do. Misfeasance is the improper doing of an act which a person might lawfully do. 35 Am. Jur. 1023, Master and Servant, section 586. This distinction is amplified in the case of Gregor v. Cady, 82 Maine 131, 136, 19 A. 108, 17 Am. St. Rep. 466, 469, in the following language:

" 'A distinction exists between nonfeasance and misfeasance —between a total omission to do an act which one gratuitously promises to do and [the other] a culpable negligence in the execution of it. * * * If a party makes a gratuitous engagement and actually enters upon the execution of the business and does it amiss through the want of due care by which damage [danger] ensues to the other party, an action will lie for this misfeasance.' "

■ The allegation in plaintiff's petition that the sheriff did not continue to hold the ladder amounts to an allegation that he entered upon the execution of a promise to hold the ladder and negligently let go of it. This is an allegation of conduct constituting misfeasance.

Another test to determine the liability of an employee of a county to an injured party is set forth in the case of Genkinger v. Jefferson County, 250 Iowa 118, 120, 93 N.W.2d 130. We state:

"An examination of these authorities shows the rule to be well established that as to the county and the individual members of the Board of Supervisors there is no liability for nonfeasance in the exercise of a governmental function. As to employees the rule is that a tortious act which causes injury to another in violation of a duty *owed to the injured party* makes the employee personally liable." (Emphasis supplied.)

■ An employee is not personally liable for a breach of duty to the general public although a particular person may be injured thereby. He is, however, liable for injuries resulting from the breach of a duty to the injured party. This court in Smith v.

Miller, 241 Iowa 625, 628, 40 N.W.2d 597, 14 A. L. R.2d 345, said:

"Aside from statutory requirements a sheriff owes a general duty to a prisoner to save him from harm and he is personally liable for negligence or wrongful acts causing the prisoner's injury or death." (Citations.)

■ As applied to the instant case, the sheriff had a duty to the public to keep custody of the plaintiff and this duty included the right to require plaintiff to perform labor. He did, however, have a duty to furnish plaintiff safe equipment and a duty to refrain from ordering him to climb an unsafe ladder. Having undertaken the holding of the ladder, he also had the duty to plaintiff to continue to hold it so long as was necessary for plaintiff's safety. The allegations of subparagraphs (2) and (3) of paragraph 3 are allegations of breach of duties to plaintiff as an individual and if proven would support a verdict for plaintiff.

Research has failed to disclose a case in this or other jurisdictions factually similar to the instant case. The closest one we have been able to find is the case of Dudley v. Community Public Service Co., CCA Tex., 108 F.2d 119, 121, in which it was held a line construction superintendent and foreman, who chose time, place and manner of replacing pole under power line, assisted in work, and failed to have proper equipment, to de-energize power line, to warn or instruct employee subsequently electrocuted, or to take other precautions, would be guilty of misfeasance rather than nonfeasance and hence liable for employee's death.

■ We hold that plaintiff's petition stated a cause of action against A. J. Murphy individually and that the court erred in sustaining the Motion to Dismiss as to said A. J. Murphy.— Reversed.

THOMPSON, PETERSON, THORNTON, and SNELL, JJ., concur.

MOORE, J., GARFIELD, C. J., and HAYS, J., concur specially.

LARSON, J., takes no part.

MOORE, J. (specially concurring)—I concur but I deem it desirable to file this special concurrence lest my position and

perhaps that of this court be misunderstood or our holding misconstrued. As pointed out in the foregoing opinion one narrow question is considered on this appeal, i.e., whether plaintiff pleads negligence constituting nonfeasance or misfeasance. The opinion holds as against defendant Sheriff A. J. Murphy plaintiff pleads misfeasance. As such it brings plaintiff's claim within one of the many exceptions to the court-made doctrine of governmental immunity from liability for torts.

In recent years much has been written by legal scholars criticizing this doctrine. It has been abrogated by many other courts. All seem to agree the concept originated with Russell v. The Men of Devon, 100 Eng. Rep. 359, 2 T.R. 667 (1788) and came to this country as English common law which the American courts have continued to follow although the English courts soon after that decision ceased to follow the rule.

In Molitor v. Kaneland Community Unit District, 18 Ill.2d 11, 25, 163 N.E.2d 89, 96 (1959) the Illinois court said: "We conclude that the rule of school district tort immunity is unjust, unsupported by any valid reason, and has no rightful place in modern day society."

In Muskopf v. Corning Hospital Dist., 55 Cal.2d 211, 213, 359 P.2d 457, 458 (1961) the court said: "After a reevaluation of the rule of governmental immunity from tort liability we have concluded that it must be discarded as mistaken and unjust."

In Williams v. City of Detroit, 364 Mich. 231, 262, 111 N.W. 2d 1, 26 (1961) in overruling the doctrine of governmental immunity for injuries received in a building used solely for governmental purposes the court said: "We see no legal, practical or moral justification for continuation of the court-decreed doctrine of governmental immunity from such actions."

On June 5, 1962, in Holytz v. City of Milwaukee, 17 Wis.2d 26, 115 N.W.2d 618, 625, Wisconsin abrogated the doctrine. The opinion reviews criticism of the rule of tort immunity by other courts and several law review and text writers. In answer to the contention a change should only be made by the legislature the Wisconsin court quoted from Hargrove v. Cocoa Beach (1957 Fla.), 96 So.2d 130, 132, 60 A. L. R.2d 1193, " 'The courts should

be alive to the demands of justice. We can see no necessity for insisting on legislative action in a matter which the courts themselves originated.' "

In a recent decision (December 14, 1962) Minnesota also rejected the doctrine of immunity. In Spanel v. Mounds View School District No. 621, Minn., 118 N.W.2d 795, 802, 803, that court said:

"Our consideration of the origins of tort immunity persuade us that its genesis was accidental and was characterized by expediency, and that its continuation has stemmed from inertia. The development of governmental liability for proprietary functions was an acknowledgment that the original rule was unduly restrictive, and reflected an uneasiness in the corporate conscience. No student of the law has suggested any explanation for the arbitrary assumption of legal responsibility for negligence in the maintenance of municipal streets and sidewalks and contemporaneously a rigid adherence to immunity with respect to those maintained by towns and counties. It has been argued on behalf of defendants that if immunity is abolished public schools will be deluged with claims for injuries resulting from inadequate supervision, from frostbite while waiting for buses, from blows struck by other children, from forbidden and mischievous activities impulsively and foolishly inspired, and from a host of other causes. Schoolchildren have a special status in the eyes of the law, and in view of the compulsory attendance statute deserve more than ordinary protection. Operating an educational system has been described as one of the nation's biggest businesses. The fact that subdivisions of government now enjoy no immunity in a number of areas of activity has not noticeably circumscribed their usefulness or rendered them insolvent.

"Nor have our privately endowed schools and colleges been forced to close their doors or curtail their academic and extra-curricular programs because the law has imposed on them liability for the negligence of their employees in dealing with students and the public. Whatever may have been the economy in the time of 'Men of Devon', it is absurd to say that school districts cannot today expeditiously plan for and dispose of tort claims based on the doctrine of respondeat superior."

976

With such a wide trend established by these and other decisions those who rely on immunity as a defense must realize our court-made doctrine of governmental immunity may be subjected to a reexamination in the near future. My concurrence in the present opinion is based on the narrow issue decided. A reevaluation of the entire immunity doctrine can wait until the question is properly presented.

GARFIELD, C. J., and HAYS, J., join in this special concurrence.