TRINITY LUTHERAN CHURCH of Des Moines, a corporation, appellant, v. V. L. BROWNER, city assessor, et al., appellees.

No. 50778.

(Reported in 121 N.W.2d 131)

198

APRIL 9, 1963.

REHEARING DENIED JUNE 11, 1963.

John Paul Jones and W. C. Hoffmann, by Burns H. Davison II, of Des Moines, for appellant.

Herrick, Langdon, Sandblom & Belin, by Allan A. Herrick, of Des Moines, for appellees.

SNELL, J.—The issue here is whether a residence property owned by plaintiff-church furnished to and occupied by its "Director of Christian Education and Minister of Music" as part of his compensation is exempt from taxation under section 427.1 (9), Code of Iowa 1958. From a denial of exemption by the City Assessor, the Des Moines Board of Review and the District Court, plaintiff appeals.

Trinity Lutheran Church of Des Moines, Iowa, plaintiff herein, is a Lutheran Church of the Missouri Synod entirely supported by voluntary contributions of its members. It is governed by a Board of Elders on a local level and it is to this board that its ministers render reports.

Plaintiff is an Iowa corporation not for profit and is the owner of the residence property involved herein.

Pastor Paul G. Stephan is the duly ordained and installed

pastor of the plaintiff-church serving under a Solemn Call extended to him through plaintiff-church.

Elmer B. Koester, thoroughly trained and educated for the teaching ministry and consecrated to the service of the church, but not ordained for preaching, also serves the church under a similar Solemn Call dated January 30, 1957. Mr. Koester was officially called to the office of Director of Christian Education and Minister of Music, and upon his acceptance of the call and installation became bound to the service of the church in a manner comparable to that of the ordained and installed pastor.

The church through the Solemn Call became obligated to pay Mr. Koester an annual salary, and in addition thereto, certain participation in the Synod pension plan, social security, a car allowance, and a suitable residence.

Although he is not ordained, Mr. Koester is a full-time servant of the church. We adopt the word "servant" from the testimony of a member of the Board of Elders.

Mr. Koester does not preach but he has charge of the teaching ministry in the congregation and in some situations his work overlaps the work of the pastor. His position is referred to by interchangeable synonymous terms. He is called Director of Christian Education, Minister of Religion, Minister of Music, Teacher of Religion, and Teacher of Christian Education. He acts as organist and director of the choirs, conducts devotional exercises, teaches religious classes and imparts religious doctrine. The superintendent of Sunday school is responsible to the congregation, but is under the direction of the Minister of Religion.

As part of his compensation Mr. Koester receives the use of a residence property owned by the church and located near but not on the church grounds.

Although the pastor as a member of the preaching ministry and Mr. Koester as a member of the teaching ministry serve in different capacities, each is a "servant" of the church bound by comparable vows to its service.

I. The exemption statute with which we are concerned here relates to property and its use and not to religious or academic titles or lines of demarcation among "servants" of the church.

For the purposes of this case and the controlling statute we do not consider the difference in status or work of the ordained preaching minister and the consecrated teaching minister to be of any significance. There is no reference to either in the statute.

Mr. Koester and his family occupy as their home a residence owned by the church. He meets with congregational members and clergy in his home and maintains an office on the premises. There is nothing in the record to distinguish this residence from any parsonage, manse, rectory or parish house owned by any church for the use of its pastor. How much other property plaintiff church may own does not appear.

II. It is not for the courts to say what property should or should not be exempt from taxation. That is the prerogative of the legislature. It is not our province to pass upon the policy, wisdom, advisability or justice of a statute. The remedy for unwise or oppressive legislation within constitutional bounds is not to be found in the courts but by appeal to the legislature. Bulova Watch Co., Inc., v. Robinson Wholesale Co., 252 Iowa 740, 746, 108 N.W.2d 365. It is our duty to determine the legislative intent from what the legislature has said and done. The only legitimate purpose of statutory construction is to ascertain the legislative intent. If a real question of construction does arise the interpretation of the statute is for the courts. Clarion Ready Mixed Concrete Co. v. Iowa State Tax Commission, 252 Iowa 500, 507, 107 N.W.2d 553; Iowa Hardware Mutual Ins. Co. v. Hoepner, 252 Iowa 660, 663, 108 N.W.2d 55.

Statutes exempting property from taxation must be strictly construed. If there is any doubt upon the question, it must be resolved against the exemption and in favor of taxation. The burden is upon one claiming exemption to show that the property falls within the exemption statute. National Bank of Burlington v. Huneke, 250 Iowa 1030, 1035, 98 N.W.2d 7; Community Drama Association of Des Moines v. Iowa State Tax Commission, 252 Iowa 854, 862, 109 N.W.2d 23.

III. Section 427.1, Code of Iowa, provides:

"The following classes of property shall not be taxed:

"*  *  *

"9. All grounds and buildings used by * * * religious institutions and societies solely for their appropriate objects * * * and not leased or otherwise used with a view to pecuniary profit." * * *.

Comparable provisions have appeared as a part of our statutory law since the Code of 1873 and are expressive of an even earlier policy of encouragement of morality and knowledge as necessary to good government and the welfare of mankind.

Granting the soundness of the concept from which various exemption statutes were conceived, the growth in extent and value of property not on the tax rolls has necessitated a serious reappraisal by those charged with the responsibility of fixing and administering public policy.

The current trend throughout the country as shown by recent decisions is to curb and restrict exemptions such as we have here. Adherence to what is now the majority rule would deny exemption to the property involved on the ground that a residence is a place in which to live and as such is not used solely for religious purposes.

There is merit in the argument and in the majority rule. Except for a situation we consider binding on us we might find the argument persuasive. We have, however, a situation that is unique.

In 1877 under an almost identical statutory provision this court considered a situation so similar as to make the pronouncements controlling.

In The Trustees of Griswold College v. The State of Iowa, 46 Iowa 275, 282, 26 Am. Rep. 138, two residence properties owned by a college and a church were occupied respectively by a professor in the college and a Bishop who was rector of the church. The question presented was the same as is now before us. Were the residences devoted solely to the appropriate objects of the college and the church? The court said "The true inquiry should be not what is actually necessary, but what is proper and appropriate to effectuate the objects of the institutions." The court held that under the provisions of the statute the residence properties so used were exempt.

That the problem was troublesome is shown by the fact that the decision was by a divided court with a vigorous dissent.

The majority opinion concludes with these prophetic words of invitation:

"We agree with counsel for appellee, that public policy demands that non-taxpaying property should not be increased; but our duty is to construe the valid acts of the legislature in this class of cases, as in all others, as we find them, and by proper rules of interpretation. *If it be the legislative will that the exemption of this class of property be further restricted than it now is, that will can easily be expressed in appropriate legislation.*" (Emphasis supplied.)

The legislature has not accepted the invitation to change the interpretation of its own express policy and under that construction of legislative policy church parsonages have been exempt from taxation for over 85 years. By legislative silence the construction has been approved. It is not for us to now change what has been accepted as the legislative intent for so many years.

The Griswold case has been cited and followed consistently and states the Iowa rule to date.

IV. 21 C. J. S., Courts, section 187, says:

"Under the stare decisis rule, a principle of law which has become settled by a series of decisions generally is binding on the courts and should be followed in similar cases. * * *

"It is a well established general rule that, where a principle of law has become settled by a series of decisions, it is binding on the courts and should be followed, in similar cases, or, as otherwise expressed, the principle so settled forms a precedent for the guidance of the courts in similar cases.

"The courts are slow to interfere with the principle announced by the decision, and it may be upheld, even though they would decide otherwise were the question a new one, or equitable considerations might suggest a different result, and although it has been erroneously applied in a particular case. In determining a case the court is not concerned with what the law ought to be, but its sole function is to declare what the law, applicable to

the facts of the case, is. A fortiori courts will not depart from an established rule of law to meet a particular case of supposed hardship."

In section 214 it is said:

"This rule is especially applicable where the construction placed on a statute by previous decisions has been long acquiesced in by the legislature, by its continued use or failure to change the language of the statute so construed, the power to change the law as interpreted being regarded, in such circumstances, as one to be exercised solely by the legislature."

As was said in City of Cherokee v. Northwestern Bell Telephone Co., 199 Iowa 727, 736, 202 N.W. 886, "the case is controlled by the rule of stare decisis."

In Swan Lake Consolidated School District v. Consolidated School District of Dolliver, 244 Iowa 1269, 1276, 58 N.W.2d 349, it is said:

"It is true the law should not be, and is not, static; it should grow and develop with economic, political and cultural conditions which surround it. This, however, does not mean that it should not generally be definite and settled. The rule of stare decisis has its basis in something stronger than the thought that the courts should follow hidebound precedent without regard to justice or equity. It derives from the consideration that when the courts have fully and fairly considered a proposition and have decided it, only the most pressing reasons should require, or in fact even permit, an opposite holding. Lawyers and clients have a right to know what the law is, and to order their affairs accordingly. Some cynic has said that 'consistency is the vice of little minds.' If we now accede to the urging of the defendant here and overrule the Truro case, we will surely have demonstrated that we are free from any such taint."

We think the rule of stare decisis is controlling here. The legislature having accepted an interpretation of its own intent for over 85 years it is not now appropriate for us to attribute to the statute a different meaning.

Under Iowa law of long standing the residence property in the case at bar is exempt from taxation.

We repeat the invitation extended to the legislature in 1877 and paraphrase what was then said by saying, if it be the legislative will that this class of property be subject to taxation that will can easily be expressed in appropriate legislation.

The case is reversed and remanded to the district court for the entry of a decree in accordance herewith.—Reversed.

GARFIELD, C. J., and PETERSON, THORNTON and STUART, JJ., concur.

THOMPSON, HAYS, LARSON and MOORE, JJ., dissent.

THOMPSON, J. (dissenting)—Injustices and inequalities in tax systems grow more unjust and oppressive as the tax burden becomes heavier. It is inescapable that a system of taxation which exempts certain properties from taxation throws a heavier load upon those not so exempted. Many owners of property are not members of any church; yet their property must bear a heavier load because those who see fit to band themselves together in church organizations are favored by our taxing statutes. This amounts to discrimination; a discrimination which the legislature, the policy-making body, is empowered to make. But it furnishes a strong reason why the legislative intent in granting exemptions should be closely scrutinized and strictly construed against the discrimination whenever the language used in the statute will reasonably permit such a holding. There is of course the additional reason, pointed out by the majority, that taxation is the rule and exemption the exception, and that one who claims an exemption must bear the burden of showing that his property falls within the exemption statute. Additionally, the majority says that the reason for statutes exempting property of churches and religious organizations is the encouragement of morality. This is the reason often given; but it seems that a morality which depends upon some discriminatory advantage over the ordinary taxpayer is a feeble one at best. Morality should not be measured in dollars and cents. It is hoped that those who believe in limiting exemptions of church property

from taxation will not be classed as being against morality and in favor of sin.

I.   The majority properly say that the modern tendency is to restrict such exemptions as the one claimed here. People ex rel. Pearsall v. Methodist Episcopal Church, 315 Ill. 233, 146 N.E. 165; Trinity Methodist Episcopal Church v. City of San Antonio, Tex. Civ. App., 201 S.W. 669, 670 ("It is well settled by excellent authority that the exemption of church property does not include a rectory or parsonage"); Church of the Redeemer v. Axtell, 41 N. J. L. 117, 119; Township of Teaneck v. Lutheran Bible Institute, 20 N. J. 86, 118 A.2d 809, 811; Watterson v. Halliday, 77 Ohio St. 150, 82 N.E. 962, 11 Ann. Cas. 1096; Pittsburg v. Third Presbyterian Church, 10 Pa. Super. 302; Second Church of Christ Scientist v. City of Philadelphia, 398 Pa. 65, 157 A.2d 54, 75 A. L. R.2d 1103; Trustees of Methodist Episcopal Church v. Ellis, 38 Ind. 3; Third Congregational Society v. Springfield, 147 Mass. 396, 18 N.E. 68; William T. Stead Memorial Center v. Town of Wareham, 299 Mass. 235, 12 N.E.2d 725. Many other authorities might be cited to the same effect.

II.   As I understand the majority opinion, it bases its reversal of the judgment of the trial court upon the doctrine of stare decisis and feels we are compelled to follow the interpretation of the statute found in The Trustees of Griswold College v. The State of Iowa, 46 Iowa 275, 26 Am. Rep. 138. There, by a 3 to 2 decision, this court held that a house owned by a church and used as a parsonage was within the exemption provided by what is now section 427.1(9) of the 1962 Code. It was then found in section 797 of the existing Code, and so far as material here the language used was identical with our present statute.

The majority thinks that because this interpretation of the statute has been known to the legislature since 1877, and it has not seen fit to change it, we are not now at liberty to overrule the decision. There is force in this contention; but it is not an invariable rule. Past authorities should be followed generally, in the interest of stability in the law; but there are exceptions. If the unsoundness of the reasoning of the precedent is apparent, and much mischief will result from following it, it should

be set aside and a sound rule adopted. Three Justices of this court have recently given notice that the doctrine of governmental immunity in tort actions is in mortal danger as soon as the question is squarely presented to us. See special concurring opinion in Moore v. Murphy, 254 Iowa 969, 973–976, 119 N.W.2d 759, 762, 763. This form of governmental immunity has been recognized in Iowa since the earliest days of our jurisprudence; but there is at least some opinion in this court that it should now be denied.

The unsoundness of the rule followed by the majority in The Trustees of Griswold College v. The State of Iowa, supra, is demonstrable, at least as applied to the present case. The contract between the church and the Reverend Mr. Koester, the minister of religion who occupies the property in question, provides that his salary shall be $5000 per year, plus certain other benefits and plus "suitable residence supplied." That is to say, part of his compensation was the provision of a dwelling house. If this property had been rented to one not employed by the church, no one would contend that it comes within the meaning of the statute, even though the income so received were used in renting another home for the minister. What difference is there, then, when the minister is furnished a residence as part of his compensation? The statute exempts from the exemption buildings "leased or otherwise used with a view to pecuniary profit." Surely a building used to furnish part of the compensation for a minister is used for pecuniary profit. And the mischief which results from an unwise and unwarranted extension of the exemption statutes is apparent. It flies in the face of the principle that taxation is the rule and exemption is the exception, and that one who claims an exemption must carry the burden of showing himself entitled to it. In fact the showing here is that the church is using this property for profit; the profit being that it thereby pays a part of the minister's salary. The majority opinion results in discrimination against those who are not members of churches, and against all nonexempt property, as has been pointed out; and, in addition, there is a discrimination in favor of a wealthy church and against the poorer church which does not have funds to purchase a residence property for its pastor but must pay

rent for him in a leased property. It has no exemption therefor. I think the rule of the majority opinion in the Griswold College case is unsound, discriminatory and not within any fair interpretation of the statute, and that it should be overruled.

III. However, for those who think the majority opinion in the Griswold case is so ancient and venerable it should not be disturbed, it must be pointed out that the majority opinion here goes even further. The property in question is not occupied by the preaching or principal pastor of the church, but is a second one devoted to carrying out the church's contract with a second minister, a "teaching" minister. If it is to be held that a church may have several pastors, assistant pastors, and teaching ministers, and may provide a tax exempt dwelling for each of them as part of their compensation, there seems no limit to the amount of real estate that may be taken off the tax rolls. While the majority stresses the point that the Reverend Mr. Koester came to the church upon its call, and devotes his full time to church work, I am unable to see the significance of the "call" here. A musical director or a custodian of a church may not be "called" to the work of the church, but many of these devote their full time to it. They are as essential to the "appropriate objects" of the church in many ways as is a "teaching minister". Most churches place much stress upon their musical programs, and no one will contend that a custodian is not a necessary employee. Are we then to be called upon to hold that if as a part of the pay of the musical director or the custodian the church agrees to and does furnish a dwelling house for him and his family, such dwelling is exempt from taxation?

If the Griswold case is to be reaffirmed, I would limit it strictly to one dwelling for the principal pastor of the church; I would not extend it to assistant pastors, teaching ministers, or other full-time employees of the church. The modern trend of authority and the increasingly heavy load of taxation upon non-exempt properties demand that we do not extend this unsound doctrine further.

I would affirm.

HAYS, LARSON and MOORE, JJ., join in this dissent.