JOSEPH J. SALITURO, Corporation Counsel, Kenosha County
You advise that your county has recently received requests from several agencies for outright financial contributions by the county for the support of their activities. One group, known as Home Maker's Health Aid Service, Inc., assists people with "homemaking and budgeting problems, as well as teaching them how to clean and properly take care of their homes." Any charge this group makes for their services is based on ability to pay. Another request for financial contribution has been received from *Page 317 
a group known as Senior Citizens Council. This organization apparently consists of retired people who wish to establish a community center where they conduct their social functions.
You note that sec. 59.07 (95), Stats., newly enacted by ch. 37, Laws of 1971, appears to contain a rather broad authorization to counties to make contributions for "cultural, artistic, educational and musical" programs and projects. You, therefore, request my opinion whether the language of this new law would allow counties to contribute monies to the two organizations briefly described above.
Section 59.07 (95), Stats., provides as follows:
"CULTURAL AND EDUCATIONAL CONTRIBUTIONS. Appropriate money for cultural, artistic, educational and musical programs, projects and related activities, including financial assistance to nonprofit corporations devoted to furthering the cultivation and appreciation of the art of music or to the promotion of the visual arts."
The general rule is that appropriations of public money for private purposes is unconstitutional. See discussions in 58 OAG 119, 125 — 131 (1969), and 59 OAG 110, 112 — 115 (1970). Of course, the general rule extends to appropriations for gifts and charities. 42 Am. Jur., Public Funds, sec. 61, p. 762. Therefore, the legality of all expenditures of public funds by governmental bodies must be measured in light of the public purpose sought to be served. State ex rel. Warren v. Reuter
(1969), 44 Wis.2d 201, 211, 170 N.W.2d 790.
However, prior to any inquiry as to whether the purpose served by a particular expenditure is truly "public," a judgment must be made as to whether the legislature has, in fact, authorized the governmental body to lend its aid to the enterprises in question. See 42 Am. Jur., Public Funds, sec. 78, p. 774. This initial inquiry became the principal point upon which our court based its decision in Pugnier v. Ramharter (1957), 270 Wis. 70, 81 N.W. 38. In that case, the court concluded that a town board possessed no statutory authority to expend money from the town treasury for contributions to such charitable agencies as the United *Page 318 
Services Organization, American Cancer Society, American National Red Cross, etc. The court stated the following. [,] at page 74:
"Appellant contends that the appropriations to the several relief agencies were for a public purpose. The cases cited in support of his position treat with questions involving the constitutionality of statutes and the application of the "public purpose test" thereunder. Here the statutes do not authorizeexpenditures from town funds for such purposes. The testcontended for by the appellant is not relevant. Had the statute provided for contributions to agencies such as here, and had challenge been made as to the constitutionality of such provisions, we would then have been confronted with questions such as arose in State ex rel. Wisconsin Development Authority v.Dammann (1938), 228 Wis. 147, 277 N.W. 278, 280 N.W. 698; Stateex rel. American Legion 1941 Convention Corp. v. Smith (1940),235 Wis. 443, 293 N.W. 161, and others of like import. Such is not the situation here." (Emphasis added.)
Therefore, I have considered the activities specifically described in your question in reference to the kinds of programs and projects for which financial contributions are authorized under sec. 59.07 (95), Stats. In doing so, it has been necessary for me to recognize that counties are quasi-municipal corporations, and have only such powers as are expressly conferred by statute or are necessarily implied therefrom.Columbia County v. Wisconsin Retirement Fund (1962), 17 Wis.2d 310,116 N.W.2d 142; Maier v. Racine County (1957), 1 Wis.2d 384,84 N.W.2d 76; Spaulding v. Wood County (1935), 218 Wis. 224,160 N.W. 473. As a result of such consideration, and for the reasons more fully set forth hereafter, I am of the opinion that expenditure of public monies for such activities as set forth in your letter is neither expressly nor impliedly authorized by the statute.
Although, as you point out in your letter, the language of the above-quoted statute seems extremely broad, at least at first reading, an analysis of the specific terminology actually used by the legislature discloses an intent of much narrower scope. *Page 319 
Nothing which you have indicated concerning the activities of the two groups which are requesting financial aid from your county even remotely suggests that they would fall within the "cultural," "artistic" or "musical" programs mentioned in sec.59.07 (95), Stats. For instance, The Random House Dictionary of the English Language (1967 Unabridged Edition) describes the two most frequently encountered meanings of the word "culture," as follows, at page 353:
"1. the quality in a person or society that arises from an interest in and acquaintance with what is generally regarded as excellent in arts, letters, manners, scholarly pursuits, etc. 2. that which is excellent in the arts, manners, etc. * * *"
Likewise, although the word "art" or "art" may sometimes be used very broadly, State ex rel. Attorney General v. City of Toledo, Ohio, O.C.D. 327, 3 C.C.N.S. 468, 490, when not otherwise qualified, it is used to designate a group of arts known as "fine arts," as distinguished from the useful or mechanical arts. Almyv. Jones (1891), 17 R.I. 265, 21 A. 616. Thus, it has been held that "artist," taken in its popular sense, means a person skilled in the fine arts. United States v. Thompson (1889), 41 F. 28, 29;Barnes v. Ingalls, 39 Ala. 193, 201. More specifically, the term "artistic" has been said to connote activities of an aesthetic nature, including, for example, painting, drawing, architecture, sculpture, poetry, music, dancing and dramatics. Wills v. C.I.R. (1969), 411 F.2d 537, 542 (C.A. Wash.). See also Design,Incorporated v. Emerson Company (1970), 319 F. Supp. 8, 10 (D.C. Tex.).
Finally, if that portion of sec. 59.07 (95), Stats., which authorizes appropriations for "educational * * * programs, projects and related activities" is read out of context, the statute would indeed appear to constitute an almost unlimited authorization to make grants of public monies for such purpose. For instance, as an abstract proposition, "education" is an extremely broad term and includes all knowledge, if taken in its full and not in its legal or popular sense; and, whatever is learned by observation, by conversation or by any other means, aside from what is known intuitively and instinctively, is education." State v. Rowan (1937), 171 Tenn. 612, 106 S.W.2d 861. In my *Page 320 
opinion, however, no meaningful construction of sec. 59.07 (95), Stats., would be possible if it would be necessary to read or interpret the statute so literally.
It should be recognized that the English word may have a variety of meanings and its precise meaning must be found in itscontext and relation to the subject matter, even though the statute is not considered ambiguous. Lukaszewicz v. ConcreteResearch, Inc. (1969), 43 Wis.2d 335, 168 N.W.2d 581. In fact, the doctrine of noseitur a sociis, a rule of statutory construction sometimes applied to restrict general descriptive language to the same class, family or gender indicated by particular words immediately preceding or characterizing the context in which the more general language is found, Boardman v.State (1930), 203 Wis. 173, 223 N.W. 556, appears determinitive of the question as to what constitutes an "educational program," etc., under sec. 59.07 (95), Stats. This rule was more recently characterized by our court in Lewis Realty v. Wisconsin R. F.Brokers' Board (1959), 6 Wis.2d 99, 94 N.W.2d 238, as follows, at page 108:
"One of the recognized canons of statutory construction is that of noscitur a soctis whereby resort is had to associated words with which it is grouped to resolve the meaning of a word having a similar but more comprehensive meaning than such associated words. 2 Sutherland, Statutory Construction (3d ed.), p. 393, sec. 4908. Under the rule of noscitur a sociis the meaning of a word takes color and expression from the purport of the entire phrase of which it is a part, and it must be construed so as to harmonize with the context as a whole. 50 Am. Jur. Statutes, p. 241, sec. 247; Vilardo v. Sacramento County (1942), 54 Cal. App. (2d) 413, 420, 129 Pac. (2d) 165, 168, 169."
A careful reading of sec. 59.07 (95), Stats., makes it evident that all the principal terms of the statute bear a kindred relationship to one another. The fact that the one more comprehensive term, "education," is used does not allow us to ignore what otherwise appears to be the purpose of the legislature. At times, it is necessary to enlarge or restrict the meaning of some words of a statute in order to harmonize them with the manifest intent of the entire statute. Mutual Fed. S LAsso. v. *Page 321 Sav. L. Adv. Comm. (1968), 38 Wis.2d 381, 157 N.W.2d 609;State ex rel. Neelen v. Lucas (1964), 24 Wis.2d 262,128 N.W.2d 425.
Considering sec. 59.07 (95), Stats., as a whole, it is unquestionably intended as an authorization to counties to appropriate money for the purpose of promoting what is more generally described as the "fine arts." In this context, the "educational" programs, etc., referred to in the statute must be understood to refer to those educational activities which are legitimately related to or form a part of "the cultivation and appreciation" of such art. In fact, it would appear that the educational aspects would be those which would more obviously promote the general public welfare. The facts under consideration in Community Drama Ass'n. v. Iowa State Tax Commission (1961),252 Iowa 854, 109 N.W.2d 23, form an illustration in point, since the court there was considering the activities of an organization of the type which would presumably fall within a statute such as sec. 59.07 (95), Stats., i.e., the Community Drama Association of Des Moines, a non-profit corporation. The association charged admission to its various presentations but presented free dramatic offerings to schools and institutions and provided instruction on drama and the opportunity for nonprofessionals to participate in its activities. In considering the tax status of the association, the court held that, although the activities of the community theater were not "charitable activities" within a sales tax statute provision, excepting from taxation the gross receipts from educational, religious or charitable activities, they did qualify as "educational activities." In reaching its conclusion that the association's "activities are educational, cultural and an asset to the community," the court pointed to testimony which bears a striking resemblance to the text of sec.59.07 (95), Stats.:
"A professor in the Speech Department, College of Fine Arts, State University of Iowa, experienced in the work of community theatres and with a thorough background of research in his field, testified: `The capital investment in the amateur theatre receives dividends of educational, cultural and social values. * * * The well-administered and intelligently directed Community Theatre has been found to be an important part of community life. * * * *Page 322 
It is not a theatre limited to the talented artistic few, but is instead a common medium of communal life. * * *'"109 N.W.2d 23, at p. 25. (Emphasis added.)
RWW:JCM