# IN THE SUPREME COURT OF IOWA

No. 23–0482

Submitted December 14, 2023—Filed March 8, 2024

**DAVID A. VAUDT** and **JEANIE K. VAUDT,**

    Appellants,

vs.

**WELLS FARGO BANK, N.A.,**

    Appellee,

and

FREDESVINDO ENAMORADO DIAZ, DENICE ENAMORADO, PREMIER CREDIT UNION, STATE OF IOWA, CHILD SUPPORT RECOVERY UNIT, and DELMY BONILLA,

    Defendants.

───────────────────────────────

FREDESVINDO ENAMORADO DIAZ and DENICE ENAMORADO,

    Third-Party Plaintiffs,

vs.

NICHOLAS M. CECERE and BARBARA A. CECERE, as Co-Trustees of THE NICHOLAS M. CECERE REVOCABLE TRUST and THE BARBARA A. CECERE REVOCABLE TRUST,

    Third-Party Defendants.

───────────────────────────────

Appeal from the Iowa District Court for Polk County, Adria Kester, Chief Judge.

Property owners appeal dismissal of their boundary-by-acquiescence and adverse-possession claims. **DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

Oxley, J., delivered the opinion of the court, in which Christensen, C.J., and Waterman, Mansfield, McDermott, and May, JJ., joined. McDonald, J., filed an opinion concurring in part and dissenting in part.

Ryan G. Koopmans (argued) of Koopmans Law Group LLC, Des Moines, and William J. Lorenz of Moore, McKibben, Goodman & Lorenz, LLP, Marshalltown, for appellants.

Scott A. Hall (argued) of Carney & Appleby, PLC, Des Moines, for appellee.

**OXLEY, Justice.**

In what started as a boundary dispute between neighbors, David and Jeanie Vaudt (the Vaudts) initiated action in this case by filing a petition to quiet title against their new neighbors, Fredesvindo Enamorado Diaz and Denice Enamorado (the Enamorados). The petition stated two causes of action: boundary by acquiescence and adverse possession. Wells Fargo—the holder of the Enamorados' mortgage—filed a motion to dismiss the claims as barred by the one-year statute of limitations in Iowa Code section 614.14(5)(*b*), which applies to actions that arise out of transfers of property by a trustee. The district court concluded that *Heer v. Thola*, 613 N.W.2d 658 (Iowa 2000) (en banc) required it to agree with Wells Fargo, and it granted the motion. As explained below, we agree with the Vaudts that *Heer* should be overruled.

I.

The Vaudts purchased their home in August of 1991 and have resided there since. Twenty-three years ago, the Vaudts cultivated a landscape barrier along the east border of their property that is marked by trees, bushes, and mulch. In more recent years, they have hired professional services to help maintain the landscaping. The Enamorados purchased the neighboring property in May of 2021 and had the property surveyed in July with the intention of installing a swimming pool and a fence. When they received the survey results, they discovered the landscaped area bordering the Vaudts' property was encroaching onto theirs. Based on the results, the Enamorados disputed the landscaped area as beyond the true western boundary line, and the Vaudts filed their petition to quiet title on June 27, 2022. Count I alleged a claim of boundary by acquiescence, pursuant to Iowa Code section 650.14 (2022), and Count II brought an action for adverse possession.

Relevant to this appeal, the Enamorados purchased their property through a trustee's deed, which was recorded on June 3, 2021. The district court determined the Vaudts' June 27, 2022 claims were time-barred by the one-year statute of limitations in Iowa Code section 614.15(5)(*b*). *See* Iowa Code § 614.14(5)(*b*) (precluding claimants from bringing an adverse claim arising "by reason of" a transfer of property held in trust against a good faith purchaser more than one year after the date of the trustee's deed). The district court was sympathetic to the Vaudts' argument that their claims arose from the conduct of the Enamorado's predecessors in interest—specifically their actions of acquiescing in the landscaping as defining the boundary between the properties—and therefore did not "arise out of" the transfer of the property via trustee's deed. But the court concluded it was bound by our decision in *Heer v. Thola*, 613 N.W.2d 658, where we held the one-year statute of limitations applied to a similar boundary-by-acquiescence claim.

On appeal, the Vaudts ask us to overrule *Heer* because its interpretation of section 614.14(5) constitutes manifest error. Wells Fargo urges us to reaffirm *Heer*, asserting that the general assembly intended to provide special protection to property transferred from a trust. We consider the parties' respective arguments.

II.

We review rulings on motions to dismiss for correction of errors at law. *Benskin, Inc. v. W. Bank*, 952 N.W.2d 292, 298 (Iowa 2020). Issues of statutory interpretation are also reviewed for correction of errors at law. *Bank of Am., N.A. v. Schulte*, 843 N.W.2d 876, 880 (Iowa 2014).

The Vaudts brought two claims: one for boundary by acquiescence and one for adverse possession. "The doctrine of acquiescence in a boundary is to be distinguished from a claim to property based upon adverse possession." *Nichols*

*v. Kirchner*, 40 N.W.2d 13, 16 (Iowa 1949); *see also Thompson v. Schappert*, 294 N.W. 580, 582 (Iowa 1940) (reiterating that the doctrines of boundary by acquiescence and adverse possession "are by no means the same though the terms are not infrequently used as if synonymous"). A claim for adverse possession establishes ownership in property if the claimant can "show hostile, actual, open, exclusive and continuous possession, under claim of right or color of title for at least ten years." *Nichols*, 40 N.W.2d at 16. Boundary by acquiescence "is the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Sille v. Shaffer*, 297 N.W.2d 379, 381 (Iowa 1980); *see also* Iowa Code § 650.14 ("If it is found that the boundaries and corners alleged to have been recognized and acquiesced in for ten years have been so recognized and acquiesced in, such recognized boundaries and corners shall be permanently established."). "The object of these [boundary dispute] proceedings is to establish corners and lines, and not the title or right of possession of adverse claimants." *Cuthbertson v. Locke*, 30 N.W. 13, 14 (Iowa 1886) (rejecting a statute of limitations defense to a boundary-by-acquiescence claim).

The district court correctly identified *Heer*, 613 N.W.2d 658, as the controlling law in this case, and we begin our analysis by discussing that decision. In *Heer*, a landowner sold two acres of his property to his daughter, Mary Heer, and transferred his own homestead into a revocable trust, presumably for estate planning purposes. *Id.* at 659. They placed, and later removed, a fence in the area of the boundary between the two properties. *Id.* After the landowner died, Heer, the trustee of her father's revocable trust, sold the homestead to Robert Thola. *Id.* Two years later, Thola learned the purported boundary was off by twenty-two feet compared to a survey of the property. *Id.* at 659–60. Heer brought a claim to establish the boundary line based on acquiescence, which the district

court granted. *Id.* On appeal, Thola argued that the claim was time-barred by the one-year statute of limitations in Iowa Code section 614.15(5)(*b*). *Id.* While the Heers acknowledged that over a year had elapsed since the property's transfer by trustee's deed, they argued that section 614.14(5) did not apply because their claim did not "arise by reason of a transfer" by a trustee. *Id.*

Based on its interpretation of the statutory language, the *Heer* court rejected the plaintiff's argument and concluded that their claim was time-barred by section 614.14(5). The court reasoned: "If it had not been for the trustee's deed, this case would never have arisen. We hold the Heers' claim 'ar[ose] . . . by reason of' the trustee's deed and was therefore barred at the time they filed their claim." *Id.* (alteration and omission in original). The dissent in *Heer* concluded that section 614.14(5)(*b*) did not apply because the plaintiff's claim arose not by reason of the trustee's deed but "by conduct and consent of two adjoining property owners or their predecessors in interest." *Id.* at 663 (Cady, J., dissenting). The dissent asserted that the majority's holding was "contrary to the basic operation of a statute of limitations" because its analysis ignored the legal connection imposed by the phrase "arising . . . by reason of" and erroneously applied the statute to any claims that could be factually traced in a "but for" sense to a trustee's deed. *Id.*

The Vaudts do not dispute that their boundary-by-acquiescence claim is controlled by *Heer*. Rather, the Vaudts ask us to overrule *Heer* as contrary to the plain language of Iowa Code section 614.14(5)(*b*). We do not take that request lightly. Stare decisis is a "venerable doctrine" that requires "the highest possible showing that a precedent should be overruled before taking such a step." *McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 180 n. 1 (Iowa 2004) (Cady, J., dissenting), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699 (Iowa 2016)); *see also State v.*

*Feregrino*, 756 N.W.2d 700, 708 (Iowa 2008) ("The doctrine of stare decisis counsels caution before we overturn prior precedent of this court."). That said, "[s]tare decisis does not prevent the court from reconsidering, repairing, correcting or abandoning past judicial announcements when error is manifest, including error in the interpretation of statutory enactments." *McElroy*, 703 N.W.2d at 395 (quoting *Miller v. Westfield Ins.*, 606 N.W.2d 301, 306 (Iowa 2000) (en banc)). We therefore begin by determining whether *Heer* erroneously interpreted section 614.14(5)(*b*).

"[O]ur starting point in statutory interpretation is to determine if the language has a plain and clear meaning within the context of the circumstances presented by the dispute." *McGill v. Fish*, 790 N.W.2d 113, 118 (Iowa 2010). "When the text of a statute is plain and its meaning clear, the court should not search for a meaning beyond the express terms of the statute . . . ." *State v. Iowa Dist. Ct.*, 902 N.W.2d 811, 815 (Iowa 2017) (quoting *State v. Schultz*, 604 N.W.2d 60, 62 (Iowa 1999)). In construing statutory language, "we look to the language chosen by the legislature and not what the legislature might have said." *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 770 (Iowa 2016). "In determining the ordinary and fair meaning of the statutory language at issue, we take into consideration the language's relationship to other provisions of the same statute and other provisions of related statutes." *In re Est. of Franken*, 944 N.W.2d 853, 859 (Iowa 2020). "If the statute is unambiguous, we do not search for meaning beyond the statute's express terms." *State v. Lopez*, 907 N.W.2d 112, 117 (Iowa 2018). In applying these principles of law, we conclude that *Heer* incorrectly interpreted the language "by reason of" in section 614.14(5)(*b*) and erroneously applied the one-year statute of limitations to a boundary-by-acquiescence claim.

Iowa Code section 614.14(5)(*b*) provides a one-year statute of limitations for certain actions involving claims involving real estate when the property is

held by a trust and subsequently transferred by the trustee to a third party. Specifically, it provides:

> An action based upon an adverse claim arising on or after January 1, 2009, by reason of a transfer of an interest in real estate by a trustee, or a purported trustee, shall not be maintained either at law or in equity, in any court to recover or establish any interest in or claim to such real estate, legal or equitable, against the holder of the record title to the real estate, legal or equitable, more than one year after the date of recording of the instrument from which such claim may arise.

Iowa Code § 614.14(5)(*b*). The statute is directed at "action[s] based upon an adverse claim arising on or after January 1, 2009, by reason of a transfer of an interest in real estate by a trustee." *Id.* The statute defines "adverse claims" to include "a claim that a particular adverse person is the owner of or has an interest in the real estate." *Id.* § 614.14(3). While the Vaudts' claims might fit within this definition of an adverse claim to the extent they claim an interest in the Enamorados' property, section 614.14(5) does not broadly apply to all adverse claims. The first sentence of the provision adds a qualifier: it applies only to those "adverse claim[s] arising on or after January 1, 2009, by reason of a transfer" of the real estate by the trustee. *Id.* § 614.14(5)(*b*). The last sentence of the provision reinforces this qualifier by tying the one-year limitation period to "the date of recording of the instrument *from which such claim may arise.*" *Id.* (emphasis added). This last sentence makes clear that the claim must arise from the instrument, i.e., the trustee's deed, the recording of which triggers the one-year limitation period. *See Ramirez-Trujillo*, 878 N.W.2d at 770 (explaining that a statute must be assessed in "in its entirety rather than isolated words or phrases to ensure our interpretation is harmonious with the statute as a whole").

In *Heer*, the court rejected the Heers' argument—that their claim arose from Thola's and his predecessor's prior actions of acquiescing in the boundary,

not from the trustee's transfer of the deed—based on its understanding that establishing a boundary by acquiescence is not self-executing, such that "judicial intervention is a requirement for establishing title by acquiescence." 613 N.W.2d at 661 (majority opinion). This statement reveals two fundamental flaws that distorted the court's reasoning. First, there is no such thing as "title by acquiescence." Rather, the doctrine is "boundary by acquiescence," and it merely establishes the boundary between two adjoining parcels; it does not disturb title to property as the *Heer* court suggested. *See Cuthbertson*, 30 N.W. at 14 ("The object of these [boundary dispute] proceedings is to establish corners and lines, and not the title or right of possession of adverse claimants."). Second, the court's focus on the need for judicial intervention led it to reason that but for the trustee's deed, "this *case* would never have arisen." *Heer*, 613 N.W.2d at 662 (emphasis added). But that's not the causal connection required by section 614.14. By identifying a "*claim arising . . . by reason of a transfer* of an interest in real estate by a trustee," the statute requires a connection between the claim and the trustee's transfer, not merely between the "case" and the trustee's transfer, as the *Heer* court found. *Cf. Am. Fam. Mut. Ins. v. Petersen*, 679 N.W.2d 571, 582–83 (Iowa 2004) (recognizing that "the phrase 'arising out of' in the context of [underinsured motorist] provisions of an insurance policy . . . requires something less than the traditional concept of 'proximate cause' . . . [but] something more than the mere fact that the vehicle was the situs of the injury"). The Heers' boundary-by-acquiescence claim arose in 1983, ten years after the relevant parties had acquiesced in the boundary line for a period of ten years. *See Heer*, 613 N.W.2d at 661 (explaining the timing); *see also* Iowa Code § 650.14 (establishing the requirements for proving a boundary-by-acquiescence claim). Whether or not the Heers had sought to enforce the claim, that claim could not have "aris[en] . . . by

reason of a [trustee's] transfer" by warranty deed in 1994 because it already existed. Rather, section 614.14 is more narrowly focused on claims specifically arising "by reason of" the trustee's transfer, such as claims concerning the trustee's affidavit, their authority to transfer, or homestead rights triggered when a homestead is conveyed.

The *Heer* court's interpretation is also contrary to the basic operation of a statute of limitations where it bars a cause of action based on acts, i.e., the filing of a trustee's deed, that did not give rise to the legal elements of the claim. *See* 51 Am. Jur. 2d *Limitation of Actions* § 75, West (database updated Feb. 2024) [hereinafter 51 Am. Jur. 2d *Limitations of Actions*] ("The substance of a cause of action, rather than its form, determines the appropriate statute of limitations which applies to a particular case."). Generally, the statute of limitations period begins to run when a cause of action accrues. *See id.* § 126. "A claim ordinarily accrues, thereby triggering the relevant limitations period, when a plaintiff has a complete and present cause of action." *Id.* § 128; *see also Hallett Constr. Co. v. Meister*, 713 N.W.2d 225, 232–33 (Iowa 2006) (explaining that claim for recovery of real property did not arise until tenant refused to vacate property after termination of tenancy because that is when the occupancy became adverse rather than permissive); *K & W Elec., Inc. v. State*, 712 N.W.2d 107, 116 (Iowa 2006) ("Generally, a claim accrues when 'the wrongful act produces injury to the claimant.'" (quoting *Scott v. City of Sioux City*, 432 N.W.2d 144, 147 (Iowa 1988))).

Whether or not this litigation (the "case" as identified by the *Heer* court) would have occurred but for the trustee's filing of the deed has no bearing on determining the applicability of a statute of limitations provision. "A statute of limitations must only apply to the particular actions it recites, and no others." *Heer*, 613 N.W.2d at 663 (Cady, J., dissenting). Therefore, even if the *case* would not have been brought but for the transfer of property by trustee's deed, the

plaintiff's *cause of action* accrued when the underlying elements of the claim occurred. *See* 51 Am. Jur. 2d. *Limitations of Actions* § 126. The last sentence of section 614.14(5)(*b*) gives effect to (and thereby reinforces) this causal connection between a statute of limitations and accrual of the particular claim to which it applies by tying the one-year limitation period to "the date of recording of the instrument *from which such claim may arise.*" Iowa Code § 614.14(5)(*b*) (emphasis added). This sentence clarifies that such claims must arise from the recording of the trustee's deed because the recording is what triggers the one-year limitation period. *See MidWestOne Bank v. Heartland Co-op*, 941 N.W.2d 876, 885 (Iowa 2020) ("When the statute sets forth the triggering event, '[t]here is no suggestion or hint in [the statute's] language that the legislature intended that we impose a different commencement date for the limitation period . . . .'" (alterations and omission in original) (quoting *Schultze v. Landmark Hotel Corp.*, 463 N.W.2d 47, 50 (Iowa 1990))). The *Heer* court failed to appreciate the statute in its entirety.

As we explained, boundary by acquiescence "is the mutual recognition by two adjoining landowners for ten years or more that a line, definitely marked by fence or in some manner, is the dividing line between them." *Sille*, 297 N.W.2d at 381; *see also Petrus v. Chi., R.I. & P.R. Co.*, 61 N.W.2d 439, 442 (Iowa 1953) ("Acquiescence to the establishment of a boundary line must be by both adjoining landowners. It involves notice or knowledge of the claim of the other party."). Therefore, a boundary-by-acquiescence claim arises from the conduct and consent of two adjoining property owners. That one of the adjacent properties is subsequently transferred by a trustee's deed simply has no relevance to the elements of the claim. In other words, there is no inherent legal connection between the underlying cause of action and the trustee's deed to support the *Heer* court's application of section 614.14(5)(*b*) to a boundary-by-acquiescence claim.

Wells Fargo counters that section 614.14 deliberately gives preferential treatment to trusts because their unique characteristics entitle them to special considerations under the law. Therefore, they argue that section 614.14 is a title-clearing statute intended to clear all adverse claims that might exist against real property when the property is held in trust and subsequently transferred by the trustee. We acknowledge that Iowa Code section 614.14 does provide special rules for real estate transferred by a trust. It grants to a "bona fide purchaser . . . for value in good faith and without notice of any adverse claim" all rights in the property held by the trustee and the trust beneficiary "free of any adverse claim" where the purchaser relies on the affidavit required to be recorded by the trustee with the instrument of transfer. Iowa Code § 614.14(1), (2). The trustee must state under oath that the real estate at issue was properly conveyed to the trust and that he is the current trustee with authority to enter the transaction at issue "free and clear of any adverse claims." *Id.* § 614.14(2). The statute allows the trustee to record the affidavit in the land records in lieu of recording the full trust instrument establishing the trustee's authority, which would also reveal other information contained in the trust instrument that the trust grantor would prefer to keep private. *See* Frances H. Foster, *Privacy and the Elusive Quest for Uniformity in the Law of Trusts*, 38 Ariz. St. L.J. 713, 729 (2006) (discussing privacy concerns accompanying disposition of property through a will, which becomes public information when admitted to probate, and the use of trusts to protect such disclosure, identifying Iowa Code § 614.14 among state statutes allowing trustees to record affidavits without disclosing dispositive trust provisions to the public). The statute also imposes warranties from the trustee to the transferee related to the validity of the trust and the trustee's transfer of the trust's property. Iowa Code § 614.14(4).

But this special treatment does not mean the statute of limitations in subsection (5) is a title-clearing statute barring all prior claims against the property. Considering "the language's relationship to other provisions of the same statute and other provisions of related statutes," *Franken*, 944 N.W.2d at 859, we note that other provisions in the Iowa Code serve a title-clearing function. "Marketable title statutes are 'statutes designed to shorten the period of search required to establish title in real estate and give effect and stability to record titles by rendering them marketable and alienable—in substance to improve and render less complicated the land transfer system.'" *Fencl v. City of Harpers Ferry*, 620 N.W.2d 808, 812 (Iowa 2000) (en banc) (quoting *Chi. & N.W. Ry. v. City of Osage*, 176 N.W.2d 788, 793 (Iowa 1970)); *see also Siedel v. Snider*, 44 N.W.2d 687, 688 (Iowa 1950) ("The terms merchantable, mark[e]table, clear, perfect, good, as applied to title, are generally considered as synonymous."). Iowa has a marketable record title act. *See* Iowa Code § 614.31. We have recognized that section 614.31 "established a forty-year marketable record title: 'Any person who has an unbroken chain of title of record to any interest in land for forty years or more, shall be deemed to have a marketable record title to such interest . . . subject only to the matters stated in section 614.32.'" *Fencl*, 620 N.W.2d at 812 (omission in original) (emphasis omitted) (quoting Iowa Code § 614.31). Once a forty-year marketable title is established, by statute, it "operates to extinguish any interest, 'the existence of which depends upon any act, transaction, event or omission that occurred prior to the effective date of the root of title . . . ,' subject, however, to the matters stated in section 614.32." *Id.* (quoting Iowa Code § 614.33). Section 614.33 expressly extinguishes claims arising from "act[s], transaction[s], event[s] or omission[s]" that are more than forty years old, i.e., that predate the root of title. *Id.*

Section 614.17 is also a "marketable title act known as the ten-year act." *Id.* at 813. It bars "[a]n action based upon a claim arising or existing prior to January 1, 1980," asserting an interest in real property against a title holder in possession if a statement of the claim was not filed with the county recorder by July 1, 1992. Iowa Code § 614.17(1). Section 614.17A governs such actions filed after July 1, 1992, and precludes "claim[s] arising more than ten years earlier or existing for more than ten years" against a title holder in possession if the title holder has "held chain of title for more than ten years," *id.* § 614.17A(1), unless the claimant files a statement of the claim with the county recorder "within ten years of the date on which the claim arose or first existed," *id.* § 614.17A(2). Where section 614.33 bars all claims after forty years, section 614.17A bars all claims against a title holder in possession of the property that are more than ten years old unless the claimant files a statement of the claim within ten years of its accrual. *See Franken,* 944 N.W.2d at 856 ("Generally speaking, '[section 614.17A] bars actions to recover or establish interests in or claims to real estate in two situations: if the claim arose more than ten years previously, or if a ten-year extension period expired without the claimant filing a statement triggering an additional ten-year extension.' " (quoting *In re Est. of Hord,* 836 N.W.2d 1, 5 (Iowa 2013))).

In contrast to these title-clearing provisions, the claims to which the statute of limitations in section 614.14(5)(*b*) applies are more limited. Rather than applying broadly to "actions . . . to recover or establish any interest in or claim to such real estate," Iowa Code § 614.17A(1); *see also id.* § 614.17(1), section 614.14(5) applies to "[a]n action based upon an adverse claim arising on or after January 1, 2009, *by reason of a transfer of an interest* in real estate by a trustee." (Emphasis added.) Sections 614.33 and 614.17A are triggered by the mere passage of time since the claim accrued, not "by reason of" a specific transaction

like the transfer by the trustee identified in section 614.14. This comparison to other title-clearing statutes reveals the import of the statutory language "arising . . . by reason of a transfer" by the trustee. These statutes also reveal that the legislature knew how to draft the statute to bar *any* claim brought after a period of time, had that been its intent. *Cf. Farmers Coop. Co. v. DeCoster*, 528 N.W.2d 536, 538–39 (Iowa 1995) (per curiam) (holding that when a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute tends to show a different intent existed).

For the foregoing reasons, we conclude that *Heer* erroneously interpreted the plain language of section 614.14(5)(*b*) to improperly eliminate certain boundary-by-acquiescence claims using reasoning that distorts the acquiescence doctrine. Our court is unanimous on this point, and the partial dissent resists solely on stare decisis grounds, suggesting we limit *Heer*'s application to boundary-by-acquiescence claims and allow only the Vaudts' adverse-possession claim to proceed. The distinction between claims for adverse possession and boundary by acquiescence is murky enough, *see, e.g.*, 11 C.J.S. Boundaries § 144, West (database updated Aug. 2023) (describing boundary by acquiescence as "conceptually similar" but "mutually exclusive of adverse possession"); Lynn Foster & J. Cliff McKinney, II, *Adverse Possession and Boundary by Acquiescence in Arkansas: Some Suggestions for Reform*, 33 U. Ark. Little Rock L. Rev. 199, 200 (2011) ("Is boundary by acquiescence a sort of 'adverse possession light,' serving as a substitute for parties who cannot prove adverse possession of contiguous property?"), and we see no need to further muddy the waters and limit the Vaudts' potential remedies by perpetuating *Heer*'s errors. *Heer* is overruled to the extent it held the statute of limitations in section 614.14(5)(*b*) applies to claims like the Vaudts', which arose from events unrelated to the neighboring property's transfer by trustee's deed.

III.

For the foregoing reasons, we reverse the district court's dismissal of the Vaudts' claims and remand for further proceedings.

**DISTRICT COURT JUDGMENT REVERSED AND REMANDED.**

All justices concur except McDonald, J., who files an opinion concurring in part and dissenting in part.

**MCDONALD, Justice (concurring in part and dissenting in part).**

I take no issue with the court's conclusion that *Heer v. Thola*, 613 N.W.2d 658 (Iowa 2000) (en banc), is erroneous, but the mere fact that a statutory precedent is erroneous is not a sufficient ground to overrule the precedent. "Stare decisis alone dictates continued adherence to our precedent absent a compelling reason to change the law." *Book v. Doublestar Dongfeng Tyre Co.*, 860 N.W.2d 576, 594 (Iowa 2015). A compelling reason "require[s] the highest possible showing that a precedent should be overruled." *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 249 (Iowa 2018) (quoting *McElroy v. State*, 703 N.W.2d 385, 394 (Iowa 2005)). That showing has not been made in this case. I would decide this case based on precedent and affirm *Heer*'s holding that section 614.14(5)(*b*) bars the plaintiffs' boundary-by-acquiescence action.

*Stare decisis et non quieta movere* means "to stand by the thing decided and not disturb the calm." *Ramos v. Louisiana*, 140 S. Ct. 1390, 1411 (2020) (Kavanaugh, J., concurring in part). In Iowa, the doctrine of stare decisis is controlling substantive law and not just a policy preference, rule of thumb, or best practice. Other than constitutional cases, *see Garrison v. New Fashion Pork LLP*, 977 N.W.2d 67, 83 (Iowa 2022) (stating "[s]tare decisis has limited application in constitutional matters" (alteration in original) (quoting *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 649 (Iowa 2019) (McDonald, J., concurring specially))), the law of stare decisis holds that courts *must* follow controlling precedents and not that courts *should* follow or *may* follow controlling precedents. *See Trinity Lutheran Church v. Browner*, 121 N.W.2d 131, 135 (Iowa 1963) ("The rule of stare decisis has its basis in something stronger than the thought that the courts should follow hide-bound precedent . . . ."). The law of stare decisis holds that "when the courts have fully and fairly considered a

proposition and have decided it, only the most pressing reasons should require, or in fact even permit, an opposite holding." *Id.*

Stare decisis as law—as a rule of decision in nonconstitutional cases—has been the law of this state since its founding. In one of its earliest decisions, this court concluded it would adhere to the precedents of the territorial supreme court on "questions growing out of the statute." *Doolittle v. Shelton*, 1 Greene 272, 273–74 (Iowa 1848). Since the *Doolittle v. Shelton* decision in 1848, this court has repeatedly held that stare decisis requires adherence to precedent. *See, e.g., State v. Flores*, ___ N.W.3d ___, ___, 2024 WL 293936, at *5 (Iowa Jan. 26, 2024) ("Stare decisis alone dictates continued adherence to our precedent . . . ." (quoting *Book,* 860 N.W.2d at 594)); *Est. of Farrell v. State*, 974 N.W.2d 132, 137 (Iowa 2022) (stating stare decisis requires adherence to precedent); *McTaggart & Sons v. White*, 136 N.W.2d 296, 296 (Iowa 1965) ("The rule of stare decisis, et non quieta movere, requires an affirmance."); *Rockafellor v. Gray,* 191 N.W. 107, 110 (Iowa 1922) ("Just what would be our ruling on this question, if it were one of first impression, we do not need to determine. We regard the question as settled by our previous decisions, and are bound by the rule of stare decisis."); *Waterhouse v. Johnson*, 189 N.W. 669, 670 (Iowa 1922) ("Whether our previous decisions are strictly correct in principle is fairly debatable. The writer hereof is quite skeptical thereon. But we are foreclosed from reopening that question."); *Goodnow v. Wells*, 38 N.W. 172, 173 (Iowa 1888) (per curiam) ("There are members of the court who think the cited case was incorrectly decided, but under the well-settled rule of *stare decisis* they think we must adhere thereto . . . .").

It is important to understand that the rule of stare decisis applies largely without regard to the content or soundness of the original decision. Stare decisis commands that this court follow controlling precedent not because it is correct

but because it is the considered judgment of our predecessors. It is a rule of authority and not reason. It is the provenance of the decision and not its merit that requires us to follow it. *See* Frederick Schauer, *Stare Decisis—Rhetoric and Reality in the Supreme Court*, 2018 Sup. Ct. Rev. 121, 123–24 (2018). It is the law of precedent—the constraining function of precedent on future decision-makers—that allows the opinions of judges to "be called *law* rather than *will*, *rules* rather than *results*." *In re Marriage of Gallagher*, 539 N.W.2d 479, 484 (Iowa 1995) (en banc) (Ternus, J., dissenting) (quoting Frank H. Easterbrook, *Stability and Reliability in Judicial Decisions*, 73 Cornell L. Rev. 422, 422 (1988)).

The law of stare decisis thus sometimes requires this court to adhere to precedent that is erroneous or suboptimal. *See, e.g.*, *Grosvenor v. Henry*, 27 Iowa 269, 272 (1869) ("And, whatever doubts some of the judges may entertain as to that case, they deem this a proper case for the application of the maxim *stare decisis*."); *Davison & True v. Davenport Gas-Light & Coke Co.*, 24 Iowa 419, 424 (1868) ("[A]nd although the court, as now constituted, might not be entirely agreed, were the question now presented for the first time, yet since it has been heretofore decided, we are content to obey the doctrine of *stare decisis*."). That is a natural consequence of the rule of stare decisis. As a rule of decision, stare decisis does work only when a later court thinks a precedent was wrongly decided. *See State v. Sewell*, 960 N.W.2d 640, 651 (Iowa 2021) (Appel, J., concurring in part and dissenting in part) ("Stare decisis, of course, is not at work unless you believe that the underlying decision was wrongly decided."). If this court now thinks a precedent was rightly decided, stare decisis is unnecessary to justify following the precedent. *See Kimble v. Marvel Ent., LLC*, 576 U.S. 446, 455 (2015) ("Indeed, *stare decisis* has consequence only to the extent it sustains incorrect decisions; correct judgments have no need for that principle to prop them up."). The consequence of stare decisis, properly

understood, is its power to ensconce incorrect or suboptimal decisions as law. The doctrine "reflects 'a policy judgment that "in most matters it is more important that the applicable rule of law be settled than that it be settled right." ' " *State Oil Co. v. Khan*, 522 U.S. 3, 20, (1997) (quoting *Agostini v. Felton*, 521 U.S. 203, 235 (1997)); *see Clark v. Hyman*, 7 N.W. 386, 389 (Iowa 1880) ("It is even of more 'importance that a rule should be fixed and stable, than that it should be strictly just.' ").

There are exceptions to the otherwise ironclad law of stare decisis. *See Youngblut v. Youngblut*, 945 N.W.2d 25, 43–45 (Iowa 2020) (discussing the law of stare decisis and its exceptions). These exceptions can be thought of as the law of overruling. One of those exceptions permits a court to overrule a decision where the decision was not only wrong but egregiously wrong. Over the years, this court has articulated this threshold standard of wrongness in a variety of ways. This court can overrule a decision where "error is manifest." *Garrison*, 977 N.W.2d at 83 (quoting *McElroy*, 703 N.W.2d at 395). The challenged decision can be overruled only where "palpably wrong." *Cover v. Craemer*, 137 N.W.2d 595, 599 (Iowa 1965); *Lemp v. Hastings*, 4 Greene 448, 450 (Iowa 1854). Or "palpably erroneous." *State v. Machovec*, 17 N.W.2d 843, 846 (Iowa 1945). Or "clearly erroneous." *State v. Williams*, 895 N.W.2d at 859 (Iowa 2017). Or "demonstrably erroneous." *Garrison*, 977 N.W.2d at 83 (quoting *Goodwin v. Iowa Dist. Ct.*, 936 N.W.2d 634, 649 (Iowa 2019) (McDonald, J., concurring specially)).

However articulated, the threshold showing of wrongness that permits this court to overrule a prior decision must be more than mere disagreement with the prior case. *See Johnston v. Iowa Dep't of Transp.*, 958 N.W.2d 180, 185–86 (Iowa 2021). Mere disagreement "is not the type of 'manifest' error or 'compelling reason' that supports overruling our precedent." *Id.* at 186 (quoting *Bd. of Water*

*Works Trs. v. Sac Cnty. Bd. of Supervisors*, 890 N.W.2d 50, 61–62 (Iowa 2017)). This court does not overturn cases "merely because we might have come to a different conclusion." *State v. Thompson*, 856 N.W.2d 915, 920 (Iowa 2014) (quoting *State v. Bruce*, 795 N.W.2d 1, 3 (Iowa 2011)). "Revisiting settled precedent whenever four justices of this court find prior cases 'unpersuasive' leads to serious and troubling repercussions. Too many long-settled rules are put back into play. This subverts the goals served by the doctrine of stare decisis." *State v. Short*, 851 N.W.2d 474, 515 (Iowa 2014) (Waterman, J., dissenting).

Under the law of stare decisis, for this court to overrule a statutory precedent, the challenged decision must be outside the range of legal discretion afforded to the prior decision-makers. *See* Caleb Nelson, *Stare Decisis and Demonstrably Erroneous Precedents*, 87 Va. L. Rev. 1, 4–8 (2001). Stated differently, this court can overrule a statutory precedent only where the prior decision amounted to an abuse of the prior court's interpretive discretion given the relevant legal materials and rules. *See id.* at 5. This threshold showing of wrongness is closely analogous to the standard of review this court applies to review of an agency's interpretation of law where the agency was vested with interpretive authority. When an "agency has been clearly vested with the authority to interpret a statute, then a court may only disturb the interpretation if it is 'irrational, illogical, or wholly unjustifiable.' " *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 256 (Iowa 2012) (emphasis omitted) (quoting Iowa Code § 17A.19(10)(*l*) (2007)). The constitution vests this court with the authority to interpret statutes. Why should the current members of this court treat the considered decisions of their predecessors with less deference than an agency decision? The law of stare decisis says that we should not.

Even when the prior decision is sufficiently wrong to permit overruling, the law of stare decisis demands that this court consider countervailing reasons to nonetheless adhere to the precedent. The law of stare decisis requires there be "special justification[]" to overrule an erroneous decision. *Burnett v. Smith*, 990 N.W.2d 289, 308 (Iowa 2023) (Christensen, C.J., concurring) (explaining there must be "special justifications beyond the belief that [precedents] were wrongly decided to warrant overruling them"); *Short*, 851 N.W.2d at 515–16 (Waterman, J., dissenting). Over the years, this court has articulated the standard in different ways. There must be "compelling reason[s]." *Book*, 860 N.W.2d at 594. Or "cogent reasons." *State v. Brown*, 930 N.W.2d 840, 854 (Iowa 2019) (quoting *Kiesau v. Bantz*, 686 N.W.2d 164, 180 (Iowa 2004) (Cady, J., dissenting), *overruled on other grounds by Alcala v. Marriott Int'l Inc.*, 880 N.W.2d 699, 708 & n.3 (Iowa 2016)). Or "the most cogent circumstances." *Ackelson v. Manley Toy Direct, L.L.C.*, 832 N.W.2d 678, 688 (Iowa 2013). Or "only the most pressing reasons." *Trinity Lutheran*, 121 N.W.2d at 135 (quoting *Swan Lake Consol. Sch. Dist. v. Consol. Sch. Dist. of Dolliver*, 58 N.W.2d 349, 353 (Iowa 1953)). Or where there is a "great and imperious necessity." *Remey v. Iowa Cent. Ry.*, 89 N.W. 218, 227 (Iowa 1902). However articulated, the standard imposes upon this court a high threshold for overruling a statutory decision even when the decision was outside the range of legal discretion.

Even assuming *Heer* was manifestly erroneous, palpably erroneous, demonstrably erroneous, clearly erroneous, etc., I cannot conclude that *Heer* is one of the rare statutory precedents that should be overruled. In reaching that conclusion, I first note it is irrelevant that *Heer* was issued by a divided court. A decision of a divided court must be followed as controlling law:

> The only door of argument open to the appellant is to seek the overruling of the opinion in the [prior case]. The fact that the

> decision was close and doubtful is urged by the appellant as a reason for its overruling. Such reason is not adequate. We were under the same duty of original decision whether the case were close and doubtful or otherwise. There are strong practical reasons why we should not be swift or willing to overrule a decision which has been arrived at after full consideration and without inadvertence or misunderstanding. As a precedent it has become a practical verity; and no less such because it is doubtful, or deemed so. It became at once a beacon to trial judges and a rule for the decision of other cases. To treat a question thus settled as still open is to convert the beacon into a will-o'-the-wisp and to destroy, quite, the force and effect of the law of precedent as a guide to the rights of litigants. And this is no less true even though the decision shall have been rendered by a divided court. Divided opinion in arriving at a decision is not uncommon or inappropriate. But after decision the court ceases to be divided thereon and becomes unanimously obedient to the precedent. If the judicial rule were otherwise it would subject all precedents to a rediscussion and reconsideration with every change in the personnel of the court. Such a course would be quite intolerable.

*Goodman v. Henry L. Doherty & Co.*, 255 N.W. 667, 668 (Iowa 1934). The idea that a split opinion "is more readily assailable than a unanimous opinion . . . is untenable." *State v. Grattan*, 256 N.W. 273, 273–74 (Iowa 1934). "It is highly essential to the public weal that judgment be stable. It is just as essential that judicial precedents be stable. One cannot obtain without the other. The fact that the decision . . . was reached by a less number of judges than the whole does not of itself furnish any reason whatever for repudiating it." *Id.*

Beyond that, there are several countervailing considerations that lead me to conclude *Heer* should not be overruled. The doctrine of legislative acquiescence counsels against overruling *Heer*. "[W]e presume the legislature is aware of our cases that interpret its statutes." *Earley v. Bd. of Adjustment*, 955 N.W.2d 812, 819 (Iowa, 2021) (alteration in original) (quoting *Doe v. New London Cmty. Sch. Dist.*, 848 N.W.2d 347, 355 (Iowa 2014)). "When many years pass following such a case without a legislative response, we assume the legislature has acquiesced in our interpretation." *Id.* (quoting *New London*, 848

N.W.2d at 355). Once enough time has passed, "the power to change the law as interpreted . . . [is] one to be exercised solely by the legislature." *In re Vajgrt*, 801 N.W.2d 570, 574 (Iowa 2011) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 574 (Iowa 2002)).

*Heer* was decided twenty-four years ago, and the legislature has not signaled any disagreement with the decision. In similar circumstances, we have concluded that the doctrine of legislative acquiescence required affirmance of an unchallenged precedent. In *Cunningham v. Welde*, a precedent announcing a "rule of property" had "passed unchallenged by the legislature" for seventeen years. 9 N.W. 304, 304 (Iowa 1881). We adhered to the decision, explaining it was the "most fitting occasion for the application of the salutary maxim, *stare decisis*." *Id.* In *Gard v. Little Sioux Intercounty Drainage District*, we concluded that the passage of nine years since the challenged precedent was a sufficient amount of time to conclude the matter was "settled by the court" and "tacitly accepted by the legislature." 521 N.W.2d 696, 698 (Iowa 1994). In *State v. Iowa District Court*, we applied the doctrine of legislative acquiescence to uphold a decision only eight years old. 902 N.W.2d 811, 818 (Iowa 2017). In *Brewer-Strong v. HNI Corp.*, we affirmed a statutory precedent when "eight years ha[d] passed without a legislative response altering these sections, which we embrace[d] as the legislature's acquiescence to our statutory interpretation of these Code sections." 913 N.W.2d 235, 249.

I am aware of only one case in which this court overruled precedents interpreting a statute after more than twenty years of legislative silence. In *State v. Davis*, 944 N.W.2d 641 (Iowa 2020), this court overruled twenty-one-year-old precedents interpreting restitution statutes. *Id.* at 646–47. Within days, the legislature, almost unanimously, passed a law amending the relevant statutory provisions and abrogating our overruling decision. *See* 2020

Iowa Acts ch. 1074, § 69 (codified at Iowa Code § 910.1(1), (2), (4), (7), (8), (9) (2021)); *State v. Hawk*, 952 N.W.2d 314, 317 (Iowa 2020) (explaining the legislature changed the law "within days of *Davis*"). As *Davis* demonstrates, the court should leave long-standing statutory precedents alone.

Related to the doctrine of legislative acquiescence is the statutory reenactment and statutory amendment rule. The statutory reenactment rule holds that reenactment of a statute incorporates any settled interpretations of the statute, and the statutory amendment rule holds that amendment of a statute without overruling the contested decision manifests assent to the court's interpretation of the statute. *See, e.g.*, *State v. Montgomery*, 966 N.W.2d 641, 651 (Iowa 2021) (declining to overrule case where legislature amended statute at issue without overruling decision); *Vajgrt*, 801 N.W.2d at 574 (holding that precedent should be followed where legislature reenacted statute "without attempting to disturb the holding"); *Fitzgerald v. Hale*, 78 N.W.2d 509, 515 (Iowa 1956) ("Moreover, there is a rule of statutory construction that when a statute has received a judicial construction and is substantially reenacted, such construction may be regarded as having been adopted by the legislature."); 73 Am. Jur. 2d *Statutes* § 74, West (database updated Feb. 2024) (stating that legislative acquiescence rule "may become significant . . . where the statute has been amended, but no change has been made that affects the court's interpretation").

The statutory amendment rule counsels against overruling *Heer*. In 2008, the legislature amended the specific subsection at issue in this case, section 614.14(5)(*b*), without attempting to disturb the holding of *Heer*. *See* 2008 Iowa Acts ch. 1119, §§ 12, 13 (codified at Iowa Code § 614.14(1), (5), (6) (2009)). In 2009, the legislature again amended section 614.14 without disturbing the holding of *Heer*. *See* 2009 Iowa Acts ch. 52, § 1 (codified at Iowa Code § 614.14(6)

(2011)). Stare decisis requires adherence to our prior decision where, as here, "the general assembly has reenacted or repeatedly amended the statutory provision in question without disturbing our previous interpretation." *Welch v. Iowa Dept. of Transp.*, 801 N.W.2d 590, 599–600 (Iowa 2011); *see Brewer-Strong*, 913 N.W.2d at 249 (affirming prior decision where legislature amended related statutory provisions but "declined to make any changes" to the Code sections at issue).

A final consideration counsels against overruling *Heer*. Even where a precedent may be sufficiently wrong to permit this court to overrule it, this court generally does not do so when the precedent involves real property. In the "area of real property," certainty of the law "is of paramount importance." *Est. of Cawiezell v. Coronelli*, 958 N.W.2d 842, 848 (Iowa 2021); *see Payne v. Tennessee*, 501 U.S. 808, 828 (1991) ("Considerations in favor of *stare decisis* are at their acme in cases involving property . . . ."); *Reconstruction Fin. Corp. v. Deihl*, 296 N.W. 385, 388–89 (Iowa 1941) (stating that when a case involves a "rule of property," "[t]he desirability of adhering to established precedent in such a matter is apparent"). In cases involving real property and title to land, "[i]t is only in rare instances that courts feel justified in overruling such a decision." *Reconstruction Fin. Corp.*, 296 N.W. at 389. "[I]f each new set of judges consider[ed] themselves at liberty to overthrow the doctrines of their predecessors, our system of jurisprudence . . . would be the most fickle, uncertain, and vicious the civilized world has ever seen . . . ." *Remey*, 89 N.W. at 227. "[R]ules of property, which should be as steadfast as the hills, would, but for the rule of stare decisis, become as unstable as the waves . . . ." *Id.* When this court interprets a statute involving real property, "the court should continue to enforce the rule previously adhered to, even though the judges may think it erroneous in theory . . . leaving it to the legislature alone to make the needed

reform." Robert von Moschzisker, *Stare Decisis in Courts of Last Resort*, 37 Harv. L. Rev. 409, 415 (1924) (footnote omitted).

This case is not one of those rare instances in which we should reverse a case of statutory interpretation involving real property and title to land. *Heer* has been settled law for almost a quarter century. The legislature has made no effort to abrogate or in any way address the decision. To the contrary, the legislature, fully aware of this court's precedent, amended the exact statutory provision at issue in *Heer* without addressing *Heer*. Because the legislature has had ample opportunity to amend the statute and has not done so, this court should abide. "The rule *stare decisis* is one of the most sacred in the law." *Clark*, 7 N.W. at 389. The law of stare decisis recognizes that the law should progress in an orderly and principled fashion but not "over the dead bodies of slain and discarded precedents." *Gosek v. Garmer & Stiles Co.*, 158 N.W.2d 731, 734 (Iowa 1968). Thus, while I agree with the court that *Heer* was wrongly decided, I would not overrule it. In my view, stare decisis requires we affirm the district court's ruling that the plaintiffs' special action to establish a boundary by acquiescence is barred by section 614.14. As the plaintiffs have requested, however, I would not extend *Heer* to bar their very different adverse possession claim. I thus respectfully dissent in part and concur in part.